## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shawn M. Smith,<br>Individually and on Behalf of the<br>General Public,<br>1532 15th Street NW, Apt. 3<br>Washington, DC  20005<br><br>*Plaintiff,*<br><br>*v.*<br><br>Abbott Laboratories<br>d/b/a Abbott Nutrition Co.,<br>100 Abbott Park Road<br>Abbott Park, IL 60064<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Abbott Laboratories, by and through its undersigned counsel, hereby gives notice of the removal of this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.  Removal to this Court is proper because (1) this Court has original jurisdiction over this case, and (2) the United States District Court for the District of Columbia is the district embracing the place where the litigation is pending.  In support of this Notice of Removal, Defendant states as follows.

## INTRODUCTION

1.     Plaintiff Shawn M. Smith filed this action, Case No. 2016-CA-823, on February 2, 2016, in the Superior Court of the District of Columbia.  Abbott was served with the complaint on February 24, 2016.

2.     This is the second time that Smith has brought these same allegations against Abbott.  Smith filed a nearly identical complaint last year on April 27, 2015.  Ex. A  That complaint was also filed in the Superior Court of the District of Columbia.  Abbott removed the case on September 25, 2015.  Following removal, Smith voluntarily dismissed the complaint without prejudice.

3.     Smith's latest complaint again alleges that Abbott violated the District of Columbia's Consumer Protection Procedures Act ("CPPA"), District of Columbia Code § 28-3904, by selling EAS 100% Whey Protein where the "product's packaging is a deceptive and unlawful trade practice due to the nonfunctional slack-fill within the packaging."  Compl. ¶ 23. Smith alleges that Abbott "sells its products in the District of Columbia through a number of distributors and retailers to the general public and through the internet," and "has marketed, advertised, and sold EAS 100% Whey Protein directly or indirectly (through its website, and other retail outlets) to the general public of the District of Columbia."  *Id.* ¶¶ 25-26.

4.     The complaint pleads that Smith "acts for the benefit of the General Public as a Private Attorney General for claims in this action arising under the CPPA, which expressly authorizes an individual to act 'on behalf of both the individual and the general public . . . seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased'" under District of Columbia Code § 28-3905(k)(1)(B).  *Id.* ¶ 28.

5.     Based on these allegations, Smith seeks a number of remedies.  First, Smith seeks "statutory damages, punitive damages, injunctive relief, and reasonable attorney's fees, solely for himself."  *Id.* ¶ 37.  Second, Smith seeks "on behalf of the general public[,]" attorneys' fees and

an injunction that Abbott "be barred from producing, manufacturing, packaging or selling its EAS 100% Whey Protein with nonfunctional slack-fill in the District of Columbia." *Id.* ¶ 38.

6.      Smith served Abbott a copy of the complaint on February 24, 2016 and, therefore, this Notice of Removal is timely filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"  28 U.S.C. § 1446(b)(1).

## JURISDICTION UNDER 28 U.S.C. § 1332(a)

7.      This action is properly removed to this Court under 28 U.S.C. §§ 1332(a) and 1441 as an individual action between "citizens of different states" where the amount placed in controversy by the allegations in the complaint "exceeds the sum or value of $75,000."

## I.      The Court Has Diversity Jurisdiction.

8.      In Smith's near-identical complaint last year, Smith made the same factual claims about Abbott's product.  At that time, Smith pled monetary damages on behalf of "the general public."  *Smith v. Abbott Laboratories*, 2015-CA-003045B (D.C. Superior), Ex. A (the "2015 action").    Abbott removed Smith's 2015 action to the District Court when Abbott first ascertained that Smith's allegations provided federal jurisdiction under the Class Action Fairness Act ("CAFA").  Smith's action became removable under CAFA as a result of a decision of the District of Columbia Court of Appeals, *Rotunda v. Marriott International, Inc.*, 123 A.3d 980 (D.C. 2015).  Ex. B.  In *Rotunda*, the Court of Appeals held that, to obtain representative relief "on behalf of the general public," CPPA actions must comply with the requirements of Rule 23. 123 A.3d at 988-89.

9.      In his current complaint, Smith may be artfully pleading to try and avoid the Court of Appeals' decision in *Rotunda*.  Smith no longer requests damages on behalf of the general public but, instead, seeks monetary relief "*solely* for himself."   Compl. ¶ 37 (emphasis

added).  Smith's complaint does not follow the class action pleading requirements of Superior

Court Rule 23-I.  Thus, Smith's complaint is an individual action and is removable because it

meets the $75,000 diversity jurisdiction threshold.

## II.      The Parties Are of Diverse Citizenship.

10.      The citizenship of the parties in this action satisfies 28 U.S.C. § 1332(a)(1) ("The

district courts shall have original jurisdiction of all civil actions where the matter . . . is between .

. . citizens of different States.").  The Plaintiff is a citizen of the District of Columbia.  *See*

Compl. ¶ 4.  Abbott Laboratories is not a citizen of the District of Columbia—it is an Illinois

Corporation, with its corporate headquarters in Illinois.

## III.     The Amount in Controversy Exceeds $75,000.

11.      "The district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28

U.S.C. § 1332(a).

12.      For himself, Smith is seeking his individual damages and an injunction mandating

that Abbott "be barred from producing, manufacturing, packaging or selling its EAS 100% Whey

Protein with nonfunctional slack-fill in the District of Columbia."  Compl. ¶ 38.  The cost to

Abbott of complying with such injunctive relief is an appropriate consideration of the amount in

controversy analysis for diversity jurisdiction.  *See Comm. for GI Rights v. Callaway,* 518 F.2d

466, 472-73 (D.C. Cir. 1975).

13.      In order for Abbott to comply with the injunctive relief sought, Abbott would

have to change the amount of fill in the container or the product container itself.  Because it

would be inefficient to produce a special product for the District of Columbia, an injunction

would force a nationwide revision and reintroduction of the product and packaging.  The

associated costs would be significant and include costs related to: new product design,

4

prototyping and testing; redesign of product labels; introduction to the supply chain including distributors and retailers; and increased production costs. *See* March 8, 2016 Declaration of John D. Jacobs ("Jacobs Decl.).

14.     Increasing the amount of product in the current containers would require Abbott to "formulate and develop what literally would be a new product from a manufacturing and distribution perspective." Jacobs Decl. ¶ 4.  This effort would include numerous manufacturing test runs and extensive quality control, thus involving engineers, managers, and manufacturing personnel. *Id*. ¶ 5.  Just this part of the endeavor would cost Abbott in excess of $50,000. *Id*.

15.     Another costly aspect of the launch of the new product would be the redesign of the label to reflect the change in contents of the container, which includes multiple levels of review by "medical, regulatory, and legal affairs to ensure compliance with standards and regulations," and significant administrative expenses for "modifying product tracking systems and databases." *Id*. ¶ 6.  The redesign efforts alone would cost at least $20,000, and in addition the "new molds and dies" required to print the new labels would cost in excess of $25,000. *Id*.

16.     These costs quickly accumulate to more than $95,000, even if Abbott was simply to add more powder to the current packaging container (and update the accompanying label as necessary) to comply with an injunction.  Abbott would incur additional costs during the actual production of the new product if, for example, the new product required more protein powder. Smith fails to plead facts reflecting how much alleged "empty space" in the EAS product would need to be filled in his opinion.  But just a 10% increase in the current fill level would raise Abbott's production costs by approximately $180,000 per year. *Id.* ¶ 8.  If compliance with the injunction instead led to the use of a different container, "Abbott would incur far greater costs in the launch of such a new product." *Id.* ¶ 7.

17.     These costs reflect that Abbott's compliance with an order obtained by Smith for an injunction would total more than $75,000.  *Id.* ¶¶ 4-8.  Accordingly, the $75,000 amount in controversy requirement for diversity jurisdiction under § 1332(a) is met.

## JURISDICTION UNDER CAFA

18.     In the alternative, and to the extent that Smith asserts that his suit is more than an individual action in an attempt to argue for apportionment of a potential recovery so as to try and avoid federal jurisdiction, this case is properly removed to this Court under CAFA and pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.  CAFA, Pub. L. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), vests federal district courts with diversity jurisdiction over any purported class action in which (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (ii) the proposed class contains at least 100 members, and (iii) the amount in controversy is at least $5,000,000 in the aggregate. *See* 28 U.S.C. § 1332(d)(2), (d)(5). If Smith asserts that he intends to pursue or is pursuing a representative action instead of an individual action, each of these requirements is satisfied in this case.

**I.     If Smith Alleges He Represents Absent Individuals, Then This Is A Putative Class Action For Determining The Amount-In-Controversy For Jurisdictional Purposes.**

19.     To the extent that Smith claims that his request for relief "on behalf of the general public" renders his suit representative of absent individuals from this proceeding, then this case is a putative class action for jurisdictional purposes.  Compl. ¶¶ 28, 38.  In *Rotunda*, the D.C. Court of Appeals held that a CPPA action "brought by an individual on behalf of himself *and* other similarly situated members of the general public is in essence a class action, whether pled as such or not, and must satisfy the requirements of Rule 23."  123 A.3d 980, 982, 989 (emphasis original).  Thus, "the framework long established by Rule 23 [must] govern representative suits in the Superior Court." *Id.*

**II.      The Parties Are of Diverse Citizenship.**

20.      For diversity, CAFA requires that "any member" of the plaintiff class be a citizen of a State different from "any defendant." 28 U.S.C. § 1332(d)(2)(A).  As noted above, Plaintiff Smith is a resident of the District of Columbia, Compl. ¶ 4, while Abbott is not.

**III.      The Amount in Controversy Exceeds $5,000,000.**

21.      In his complaint, Smith requests "statutory damages" and "punitive damages" for himself.  *Id.* ¶ 37.  But Smith also alleges there are numerous other consumers and consumer purchases of EAS 100% Whey Protein.  *Id.* ¶ 24 ("Upon information and belief, Abbott has sold numerous bottles of EAS 100% Whey Protein in the District of Columbia.").  If Smith is seeking any relief as a representative of absent members of "the general public," the monetary relief that each of these potential class members can seek is part of the amount-in-controversy for purposes of determining federal diversity jurisdiction under CAFA.  28 U.S.C. § 1332(d)(5) ("the claims of the individual class members shall be aggregated"); *see also Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013).

22.      Smith cannot avoid CAFA jurisdiction by requesting statutory and punitive damages merely for himself while ostensibly limiting relief for members of the general public to only injunctive relief.  The monetary damages Smith alleges for himself could also be alleged by and for the absent class members Smith would purport to represent.  In fact, in Smith's original complaint filed in April 2015, Smith did allege he was seeking "[a]dditional relief to restore to the consumer money which was acquired by means of the unlawful trade practice in the District of Columbia." Ex. A, ¶ 42.  At this time, Smith has not been certified as a class representative. So Smith does not possess the legal authority to bind absent class members to a specific remedy or level of relief and thereby surrender their claims for potential monetary relief so that Smith can avoid federal subject-matter jurisdiction.  *Standard Fire*, 133 S.Ct. at 1349.  Instead, for the

purpose of evaluating the amount-in-controversy, it is necessary to assess the potential claims for statutory or other damages of absent members of the general public that Smith might purport to represent. *Id.*

23.     The amount in controversy requirement for CAFA jurisdiction is met by the potential statutory damages.  The CPPA authorizes remedies of "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer."  District of Columbia Code § 28-3905(k)(2)(A).  Abbott sold over 37,000 units of EAS 100% Whey Protein product in the District of Columbia in the three years prior to the serving of the Complaint.  March 8, 2016 Declaration of Jason Smith ("Smith Decl.") ¶ 2 (giving sales data for 12.5 oz. containers in the District over three years).     Accordingly, there is federal jurisdiction under CAFA because the over 37,000 units sold, multiplied by the $1,500 per violation in the CPPA, places an amount of more than $5,000,000 potentially "in controversy."[1] *See* 28 U.S.C. § 1332(d)(2).

**IV.     The Putative Class Would Exceed 100 Claimants.**

24.     Smith's putative class would include all members of the general public of the District of Columbia that purchased the allegedly deceptive EAS 100% Whey Protein product. *See*, *e.g.*, Compl. ¶¶ 24-28, 32-33, 38.  The more than 37,000 units of the EAS 100% Whey Protein that Abbott has sold in the District of Columbia were packaged individually and sold for individual consumption.  Smith Decl. ¶ 2.  For there to be less than 100 claimants, each claimant in the District of Columbia would, on average, need to have purchased more than 125 individual units of the product each year for three straight years.  This would equate to every single claimant consuming more than one entire package every three days, without fail, despite each

---

[1] To be clear, while Smith's allegations place this amount in controversy, Abbott denies that Smith or any other individual can or should obtain such a recovery and will vigorously defend against these allegations.

12.5 oz. jar containing nine servings of product.  Accordingly, the putative class here exceeds 100 claimants and satisfies 28 U.S.C. § 1332(d)(5)(B).

## **REMOVAL PROCEDURES**

25.     The CAFA removal statute states that class actions may be removed to federal court "in accordance with section 1446."  28 U.S.C. § 1453(b).  28 U.S.C. § 1446 also governs removal on the basis of diversity jurisdiction under § 1332(a).

26.     Consistent with § 1446, Abbott is providing this Notice, which provides the requisite "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This Notice has been prepared and signed by an authorized attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure.  *Id.*

27.     Pursuant to 28 U.S.C. § 1446(d), Smith is being provided a copy of this Notice of Removal, and a copy of this Notice of Removal is also being filed with the Clerk of the Superior Court of the District of Columbia.

28.     By filing this Notice of Removal, Abbott does not waive any defenses that may be available to it.

29.     Consistent with the requirements of the statute, a copy of all pleadings previously filed in the State Action (Case No. 2016-CA-823) and "a copy of all process, pleadings, and orders served upon" the Defendant are attached hereto.  28 U.S.C. § 1446(a).  These documents are as follows:

     1.     Original Complaint and Summons.

     2.     Affidavit of Service of Summons and Complaint.

     3.     Proof of Service.

30.     In addition, the following documents are attached to this notice as exhibits:

Exhibit A:  D.I. 1, Private Attorney General Complaint, *Shawn M. Smith v. Abbott Laboratories d/b/a/ Abbott Nutrition Co.*, Case No. 2015 CA 003045 B, April 27, 2015.

Exhibit B:  *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, (D.C. 2015)

31.    Because this Notice of Removal is being filed within thirty (30) days of the Plaintiff Smith's service of the complaint on Defendant Abbott, this removal is timely pursuant to 28 U.S.C. § 1446(b).

32.    Abbott does not bear the burden of demonstrating in this Notice the inapplicability of any potential basis upon which the Court might decline to exercise the jurisdiction granted in § 1332(d)(2).

## CONCLUSION

33.    WHEREFORE, Abbott Laboratories, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, removes this action in its entirety from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

March 15, 2016                              Respectfully submitted,

                              ___/s/  *Gregg F. LoCascio, P.C.*___
                              Gregg F. LoCascio, P.C., DC Bar No. 452814
                              Jonathan D. Brightbill, DC Bar No. 483956
                              Anders P. Fjellstedt, DC Bar No. 991431
                              KIRKLAND & ELLIS LLP
                              655 15th Street, NW, Suite 1200
                              Washington, DC  20005
                              Telephone: (202) 879-5000
                              Facsimile: (202) 879-5200

                              *Attorneys for Abbott Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF and to Plaintiff's counsel, as listed here, also by U.S. Mail and Electronic Mail:

Jonathan B. Nace
ANTONOPLOS & ASSOCIATES
1725 DeSales, St., NW, #600
Washington, DC 20036
Telephone: (202) 803-5676
Email:  nace@antonlegal.com

Christopher T. Nidel
NIDEL LAW, PLLC
1615 New Hampshire Avenue, NW
Washington, DC 20009
Telephone: (202) 558-2030
Email:  chris@nidellaw.com

Nicholas A. Migliaccio
MIGLIACCIO LAW FIRM PLLC
Washington, DC 20003
Telephone: (202) 470-3520
Email:  **nmigliaccio@classlawdc.com**

COUNSEL FOR PLAINTIFF
*Shawn M. Smith*

*/s/ Gregg F. LoCascio, P.C.*
Gregg F. LoCascio, P.C.